UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80420-CIV-MARRA

BRIAN UPHOFF, individually and on behalf
of all others similarly situated,

Plaintiff,

vs.

WACHOVIA SECURITIES, LLC,
WACHOVIA SECURITIES FINANCIAL
NETWORK, LLC, and WELLS FARGO &
COMPANY,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint (DE 6) and Defendants' Motion for Hearing on its Motion to Dismiss Plaintiff's Complaint (DE 7). The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

On March 13, 2009, Plaintiff Brian Uphoff ("Plaintiff" "Uphoff") filed a class action Complaint on behalf of himself and all person similarly situated within the United States and the State of Florida.  (DE 1.)  According to the allegations of the Complaint, Defendants Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC and Wells Fargo & Company (collectively, "Defendants") breached an oral promise to pay retention bonuses to their approximately 14,600 financial advisors and brokers in order to retain their services and client base in the wake of a October 2008 announcement by Wachovia Securities, LLC and Wachoiva

Securities Financial Network, LLC that they would be purchased by Wells Fargo & Company. (Compl. ¶ 2.) It is a standard practice in the brokerage/securities business to pay retention bonuses to current brokers and financial advisors when institutional sales and mergers are announced in order to reduce the attrition of established brokers and financial advisors who would otherwise be lured by bonus and compensation promises of competitors. (Compl. ¶ 8.)

The Wachovia Securities Defendants maintain an employee telephonic communication system which allows them to simultaneously communicate information and messages to all of their brokers and financial advisors. (Compl. ¶ 9.) In October 2008, Wachovia Securities, LLC and Wachovia Securities Financial Network, LLC used this system to communicate to all their brokers and financial advisors the following: (a) "it was probable that the Wachovia securities business would be sold to Wells Fargo & Company as part of Wells Fargo's overall purchase of Wachovia Corporation; (b) each and every broker and financial advisor who stayed with the Wachovia entities after the sale would receive a meaningful 'retention bonus' and (c) this retention bonus would be paid to the brokers and financial advisors in January 2009." (Compl. ¶ 10.)

Retention bonuses are generally calculated as a percentage of the individual broker/financial advisor's previous twelve months of earned commissions and fees from clients. These percentages range from a high of 100% or more, for an institution's "top producers," down to approximately 50%, of the earned commissions and fees for the previous twelve month period. (Compl. ¶ 11.) Specifically, Plaintiff and the class of brokers/financial advisors each anticipated a minimum of $100,000.00 retention bonus based on industry practice and norms. (Compl. ¶ 3(g).). At the time of the promise to the retention bonus in October 2008, these brokers/financial

advisors were worth significantly more to competitors because of the state of the financial markets in October 2008 as compared to the date of the filing of the Complaint. (Compl. ¶ 12.) In the Fall of 2008, Plaintiff and the class of brokers/financial advisors were approached by competitors who sought to employ them in order to obtain access to Wachovia's client base. Plaintiff, and those similarly situated, chose to rely on Defendants' promise to pay retention bonuses and remained within the Wachovia entities and forewent lucrative potential bonuses from competitors. (Compl. ¶ 13-14.)

In January 2009, the retention bonuses were not paid, however, the Wachovia Defendants promised the brokers/financial advisors that they retention bonuses would be paid in the near future. (Compl. ¶ 15.) On February 20, 2009, the Wachovia Defendants announced, via the employee telephonic communications system, that no retention bonuses would be paid to any of their brokers/financial advisors. (Compl. ¶ 16.) The Wachovia Defendants knew that the promise of retention bonuses would enable them to retain the services of Plaintiff and the Class Members. (Compl. ¶ 17.) As a result, Plaintiff has been harmed and Defendants have unjustly profited from this conduct. (Compl. ¶ 18.)

Defendants move to dismiss and argue that Plaintiff has failed to allege the existence of a valid contract. Furthermore, Defendants claim that Plaintiff has failed to state a claim for promissory estoppel or unjust enrichment.

II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint

attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III.  Discussion

#### A.  Breach of Contract Claim

The United States Court of Appeals for the Eleventh Circuit recently discussed the requirements of Florida law with respect to prevailing on a breach of contract claim.  In Vega v. T-MobileUSA, Inc., the Court stated:

> For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. See, e.g., Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. St. Joe

>Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004) (citing W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So. 2d 297, 302 (Fla. Dist. Ct. App. 1999)).

Vega v. T-MobileUSA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009). Furthermore, to state a cause of action for breach of an oral contract, a plaintiff must allege that the "parties mutually assented to 'a certain and definite proposition' and left no essential terms open." W.R. Townsend Contracting, 728 So. 2d at 300 quoting Jacksonville Port Authority v. W.R. Johnson Enterprises, Inc., 624 So. 2d 313 (Fla. Dist. Ct. App. 1993); see Winter Haven Citrus Growers Ass'n v. Campbell & Sons Fruit Co., 773 So. 2d 96, 97 (Fla. Dist. Ct. App. 2000) ("Whether a contract is oral or written, it is essential that the parties mutually agree upon the material terms."). An example of an essential term is price, or in this case, the amount of the bonus for which Plaintiff has brought suit. See Drost v. Hill, 639 So. 2d 105, 106 (Fla. Dist. Ct. App. 1994) (contract unenforceable where "the parties had not reached a meeting of the minds on a material term, namely, the price"); Jacksonville Port Authority, 624 So. 2d at 313 ("Failure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement."); Louis Sherry Associates, Inc. v. Opatut, 414 So. 2d 1148 (Fla. Dist. Ct. App. 1982) (amount a party is willing to pay for services is an essential term).

Here, the Complaint does not allege a definite amount that Plaintiff, or the other financial advisors, were owed. Instead, Plaintiff merely alleges that Wachovia Securities, LLC and Wachovia Securities Financial Network, LLC promised them a "meaningful 'retention bonus'." (Compl. 10(b).) Significantly, the Complaint does not provide a specifically agreed upon amount nor does it provide a method for calculating an amount of the bonus. Instead, the Complaint states that Plaintiff and the class anticipated a minimum of $100,000.00 "based on industry practice and

norms." (Compl. ¶ 3(g).)  Custom in a particular industry, however, cannot change the requirement of contract law that the parties mutually agree on the essential term of price.  See Winter Haven, 773 So. 2d at 96 ("custom cannot change the law of contract").  Moreover, Florida law requires that terms of compensation set forth in contracts be significantly more specific than the purported contract alleged in the Complaint.  See, e.g., Metropolitan Dade County v. Estate of Hernandez, 591 So. 2d 1124 (Fla. Dist. Ct. App. 1992) (oral contract lacks essential terms based on court's inability to "ascertain whether the amount of the settlement was $10,500.00 or $10,000.00"); Irby v. Memorial Healthcare Group, Inc., 901 So. 2d 305, 306 (Fla. Dist. Ct. App. 2005) (letter proposing employment but failing to provide terms of employment or salary of the plaintiff is not an enforceable contract under Florida law).

In response, Plaintiff points to Community Design Corp. v. Antonell, 459 So. 2d 343 (Fla. Dist. Ct. App. 1984).  There, the plaintiff sued the defendant corporation for failing to pay him his bonus or paid vacation.  The defendant argued that the contract was too indefinite based on, among other factors, the uncertainty regarding the amount of the bonus.  The court found that "[w]hile the exact amount of the bonus and the degree of completion required were disputed, there was sufficient evidence for the jury to find an oral contract between the parties." Id. at 345.  The court did, however, note that "the parties acknowledged [with respect to the amount of the bonus] that a particular amount was offered, which distinguishes this case from those in which the amount is indefinite or left for future agreement." Id. at 345 n.2.  In fact, the court stated that the amount of the bonus was between $20,000 and $35,000. Id. at 345 n.1.

The Court notes that the facts of Antonell differ significantly from the facts of the instant case.  Most significantly, the Complaint does not allege that the parties arrived at an exact amount

for the retention bonus. In <u>Antonell</u>, there is no dispute that a particular sum was reached by the parties. For that reason, it appears that <u>Antonell</u> court minimized the disputed issue of fact regarding the $15,000 disparity in the amount of the bonus.[1]

Lastly, Plaintiff attempts to distinguish <u>Irby</u> and <u>Estate of Hernandez</u> by arguing that the parties were still in the negotiation phase in those cases whereas, based on the facts pled in the Complaint, there was no ongoing negotiation. Instead, the promise made was for Plaintiff to forego any and all employment offers by competitors in exchange for the retention bonus, which could either be accepted or rejected but was not subject to negotiation. (Resp. at 9.) The Court is not persuaded by this argument, however, because these cases hinge on the requirement that parties to contracts must mutually assent to the material terms. In addition, although the Complaint pleads that Plaintiff and the class members anticipated a $100,000 retention bonus based on industry practice and norms, this $100,000 amount is not based on any actual statements made by Defendants to Plaintiff.[2]

For the foregoing reasons, the Court finds that the breach of contract must be dismissed.

B.  Promissory Estoppel Claim

To state a cause of action for promissory estoppel, it is necessary to show that (1) a plaintiff

---

[1] <u>Estate of Hernandez</u> was decided after <u>Antonell</u> and ruled that a dispute over the amount of the price term made the purported contract unenforceable. Thus, <u>Antonell</u> is of questionable authority.

[2] In addition, the Court rejects Defendants' argument (Mot. at 11-12) that Plaintiff has not properly alleged time for performance. The Complaint states that the Wachovia Defendants promised to disburse the retention bonuses in January 2009 to brokers who stayed with the Wachovia entities after the sale. (Compl. ¶ 10.) Given that the Court has determined that Plaintiff has not adequately pled a claim for breach of contract, it is unnecessary to address whether Plaintiff has pled damages with respect to the breach of contract claim. (Mot. at 13-15.)

detrimentally relied on a promise made by a defendant, 2) that a defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of a plaintiff or a third person, and 3) that injustice can be avoided only by enforcement of the promise against a defendant. W.R. Townsend, 728 So. 2d at 302 citing W.R.Grace & Co. v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla. 1989); see Morse, LLC v. United Wisconsin Life Ins. Co., 356 F. Supp. 2d 1296, 1300 (S.D. Fla. 2005). "[P}romissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the essence of promissory estoppel is detrimental reliance." Financial Healthcare Associates, Inc. v. Public Health Trust of Miami-Dade County, 488 F. Supp. 2d 1231, 1237 (S.D. Fla. 2007). Significantly, "[t]he doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." Doe v. Univision Television Group, Inc., 717 So. 2d 63, 65 (Fla. Dist. Ct. App. 1998) citing Restatement (Second) of Contracts § 90 (1981); see Acosta v. District Board of Trustees of Miami-Dad Community College, 905 So. 2d 226, 231 (Fla. Dist. Ct. App. 2005) (same).

     Here, the Wachovia Defendants promised Plaintiff and the class members retention bonuses in exchange for Plaintiff remaining with Wachovia and rejecting offers to move to competitors. Defendants promised to pay these bonuses in January of 2009. (Compl. ¶ 10.) In the end, Plaintiff was left with no retention bonus. (Compl. ¶ 16.) Furthermore, Plaintiff and the class members rejected employment offers from competitors.[3] (Compl. ¶ 13.) See U.S. Security Ins. Co. v.

---

[3] In Defendants' reply memorandum, Defendants state that Plaintiff states for the first time that Plaintiff and the entire class all rejected competitors' offers. (Reply at 8.) However, the Complaint states that Plaintiff and the class were approached by competitors who sought to employ them and that Plaintiff and the class chose to rely on Defendants' promise to pay the retention bonus and instead remained with Defendants. (Compl. ¶ 13.) Based on that allegation, the Court disagrees with Defendants' characterization of the Complaint.

Shivbaran, 827 So. 2d 1090, 1092 (Fla. Dist. Ct. App. 2002) (an "injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance, and where the promisee shows that such reliance was to his detriment").

In moving to dismiss, Defendants argue that Plaintiff has failed to allege a definite promise sufficient to state a claim for promissory estoppel. In support, Defendants rely upon W.R. Grace in which the Florida Supreme Court discussed a promise that "was not definite but, on the contrary, was entirely indefinite as to terms and time." W.R. Grace, 547 So. 2d at 924. In that case, a plaintiff's contractor claimed that after the execution of a written contract of mining work, the defendant's employees advised the plaintiff that they would provide the plaintiff additional work beyond the time frame set forth in the contract if the plaintiff would purchase additional equipment. Id. at 921. For example, a statement was made to the president of the plaintiff's company who was told that "they *thought* I would be down in Manatee area *probably* three to five years drilling options." Id. at 925 (emphasis in original). Here, the statement made was significantly more clear with respect to time, term and reasonableness than the statements made in W.R. Grace. For example, Plaintiff was promised a bonus in January as long as he stayed with the company after the sale of Wachovia to Wells Fargo.

Defendants also argue that it was not reasonable for Plaintiff to rely upon the promise of a bonus in foregoing a competitor's offer. The question of whether Plaintiff's reliance was reasonable is a factual issue that cannot be resolved at the motion to dismiss stage. See FCCI Ins. Co. v. Cayce's Excavation, Inc., 901 So. 2d 248, 251 (Fla. Dist. Ct. App. 2005) (whether reliance was reasonable in claim for promissory estoppel involves resolution of factual issues); see also Romo v. Amedex

Ins. Co., 930 So. 2d 643, 652-53 (Fla. Dist. Ct. App. 2006) (same); Hetrick v. Ideal Image Development Corp., No. 8:07-cv871-T-33TBM, 2008 WL 5235131, at * 12 (M.D. Fla. Dec. 13, 2008) (same).

Lastly, the Court finds that the Complaint adequately alleges injustice. The Complaint alleges that the Wachovia Defendants should have reasonably expected that the promise of the retention bonuses would induce Plaintiff and the class members into remaining with the Wachovia entities and that Plaintiff and the class members relied on that promised to their detriment and suffered the injustice of not receiving the retention bonus. (Compl. ¶¶ 35-38.)

Accordingly, Defendant's motion to dismiss the promissory estoppel claim is denied.

### C. Unjust Enrichment Claim

The elements for a claim for unjust enrichment are "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Vega, 564 F.3d at 1274 citing Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006); Florida Power Corp. v. City of Winter Park, 887 So.2d 1237, 1241 n. 4 (Fla. 2004). "[C]ourts have held that such equitable relief is not available where the plaintiff has provided a defendant with no more than that which he was hired to do and for which he was paid his salary." Sleit v. Ricoh Corp., No. 8:07-cv-724-T-23TBM, 2008 WL 4826113, at * 10 (M.D. Fla. Nov. 4, 2008) citing In re Paxson Elec. Co., 248 B.R. 451, 463 n. 12 (Bankr. M.D. Fla. 2000); Gene B. Glick Co. v. Sunshine Ready Concrete Co., 651 So. 2d 190 (Fla. Dist. Ct. App. 1995); Ankerstjerne v. Schlumberger, Ltd., 155 Fed. Appx. 48, 52 (3d Cir. 2005).

Here, the Complaint alleges that Plaintiff and the class members were hired to provide

services as financial advisors and brokers to Wachovia's clients. (Compl. ¶¶ 5-6.) Noticeably absent from the Complaint is any allegation that the Plaintiff or the class members were not paid for these services. Nor are there any allegations that Plaintiff or the class members provided any additional service for which they were not paid. Thus, Plaintiff's unjust enrichment claim fails.

Nonetheless, Plaintiff argues that this claim should survive based on Plaintiff "refraining from accepting competitive employment in order to allow Defendants to profit over Plaintiff's and Class Member's clients and clients' assets." (Resp. at 17.)  Significantly, Plaintiff does not provide any case law that supports a finding that refraining from accepting another job constitutes a conferred benefit upon an employer. In fact, the Court finds that such a position contradicts the holding of the cases discussed above and which are not refuted by Plaintiff in his response memorandum.

For the foregoing reasons, the Court dismisses Plaintiff's unjust enrichment claim.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants' Motion to Dismiss Plaintiff's Complaint (DE 6) is **GRANTED IN PART AND DENIED IN PART**.

2) Defendants' Motion for Hearing on its Motion to Dismiss Plaintiff's Complaint (DE 7) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of December 2009.

_____
KENNETH A. MARRA
United States District Judge